O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DANIEL DICKINSON,
Plaintiff,
v.
CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,
Defendant.

Case No. EDCV 12-00923-OP

MEMORANDUM OPINION; ORDER

The Court[2] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[3]

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of Social Security, is hereby substituted as the Defendant herein.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 18.)

[3] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

**I.**

**PROCEDURAL HISTORY**

On April 10, 2009, Daniel David Dickinson ("Plaintiff") applied for a period of disability and disability insurance benefits. (Administrative Record ("AR") at 20).) He also filed an application for Supplemental Security Income ("SSI") benefits. (Id.) The claims were denied initially on July 20, 2009, and upon reconsideration on January 14, 2010. Plaintiff filed a request for hearing that was held on March 30, 2011. (Id.) Samuel Landau, M.D., a medical expert, and Sandra M. Fioretti, a vocational expert ("VE"), appeared and testified at the hearing. (Id.)

On April 22, 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 22-28.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on February 28, 2012. (Id. at 1-5.) Thus, the ALJ's decision is the Commissioner's final decision in this matter.

On June 7, 2012, Plaintiff filed a Complaint seeking review in this Court of the Commissioner's decision denying Social Security benefits. (ECF No. 1.) On October 30, 2012, Defendant filed an Answer to the Complaint. (ECF No. 11.) On March 7, 2013, the parties filed a Joint Stipulation ("JS") identifying the disputed issues before the Court for review. (ECF No. 17.)

**II.**

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly evaluated the evidence from Plaintiff's treating physician;

(2) Whether the ALJ properly considered all of Plaintiff's impairments in terms of severity, listing level, or impact on Plaintiff's residual

functional capacity ("RFC"); and

(3) Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 3.)

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## IV.

## DISCUSSION

### A. The ALJ's Findings.

The ALJ found that Plaintiff has the severe impairments of obesity, type II diabetes mellitus, and umbilical hernia. (AR at 22.) The ALJ found that Plaintiff's medically determinable impairments of depressive disorder and polysubstance abuse, considered singly and in combination, do not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities and, therefore, are not severe. (Id. at 23.) The ALJ found Plaintiff has

the RFC to perform less than a full range of medium work, can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; can stand and/or walk four hours in an eight-hour workday; can sit six hours in an eight-hour workday with normal breaks; can occasionally stoop and bend but cannot climb ladders, ropes, or scaffolds; cannot work at heights, balance, or work around unprotected machinery; and cannot operate heavy equipment or motor vehicles. (Id. at 23.)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff is capable of performing such occupations as small products assembly II ((Dictionary of Occupational Titles ("DOT") No. 739.687-030); cashier II (DOT No. 211.462-010); and optical assembler (DOT No. 713.687-0189). (AR at 27-28.)

**B. The ALJ Failed to Properly Consider the Opinions of Plaintiff's Treating Psychiatrist.**

Plaintiff contends that the ALJ did not properly evaluate the evidence from Plaintiff's treating psychiatrist, Dr. Flocerfida B. DeJesus, M.D. (JS at 4.) Plaintiff notes that Dr. DeJesus diagnosed Plaintiff with bipolar disorder, depression with psychotic remission, ADD, borderline intellectual functioning, alcohol dependence in partial remission, and features of antisocial personality disorder. (Id. (citing AR at 343).) Dr. DeJesus recognized that at times, Plaintiff's mental impairments resulted in angry outbursts, irritability, poor attention, and poor concentration. (Id. (citing AR at 345).) At various times, Dr. DeJesus noted extreme mood swings with erratic sleep patterns (id. (citing AR at 343, 345), and prescribed the anti-psychotic medication, Geodon, and an anti-depressant, Pristiq. (Id. (citing AR at 344, 346).)

Specifically, Plaintiff contends that the ALJ did not substantively address any of Dr. DeJesus' diagnoses or medical records, other than to note that "[t]reatment records from Riverside County Department of Mental Health

(RCDMH) covering the periods from February 23, 2009 through January 13, 2011 indicated that the claimant was seen sporadically for medication refills." (Id. (citing AR at 25-26).) Accordingly, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Dr. DeJesus. (Id.) The Court agrees.

With respect to Plaintiff's mental health generally, the ALJ found that his "medically determinable mental impairments of depressive disorder and polysubstance abuse, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Id. at 23.) The ALJ found mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. (Id.) The ALJ mentioned the psychiatric consultative evaluation conducted on August 10, 2008, by Sohini P. Parikh, M.D., who indicated Plaintiff had no psychiatric functional limitations. (Id. at 25 (citing id. at 222-28).) The ALJ also mentioned the July 9, 2009, psychiatric consultative evaluation conducted by Romualdo R. Rodriguez, M.D., who noted Plaintiff's complaint of manic depression and lifetime problems with bipolar disorder intertwined with marijuana and methamphetamine use, and diagnosed Plaintiff with ADHD;[4] major depressive disorder; mood disorder, not otherwise specified; and polysubstance abuse in unclear remission.[5] (Id. at 25 (citing id. at 255-62).) Dr. Rodriguez found that if Plaintiff maintained sobriety, and was "properly treated for his ADHD and depression," he could understand, remember, and carry out simple one- or two-step job instructions as well as detailed and complex instructions, and had slight to

---

[4] Plaintiff had been treated with Ritalin for his ADHD as a child. (AR at 260.)

[5] Dr. Rodriguez had no psychiatric records for review. (AR at 255.)

moderate work-related limitations. (Id. (citing id. at 255-62).) The ALJ also noted the findings of the State Agency medical consultants who reviewed the medical evidence and concluded that Plaintiff had no severe physical or mental impairments.[6] (Id. at 26.) As previously noted, with respect to Dr. DeJesus' records, the ALJ stated only that they reflected sporadic medication refill visits. (Id. at 24-25.) The ALJ did not further elaborate on Dr. DeJesus' diagnoses or findings. The ALJ also did not specifically indicate the weight given to any of the opinions.

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as it is here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th

[6] With regard to these reports, the ALJ gave Plaintiff "the benefit of the doubt by finding that his physical impairments of obesity, diabetes mellitus, and obstructive sleep apnea cause more than minimal work related restrictions." (AR at 26.)

Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation omitted) (quotation omitted).

In this case, the ALJ essentially ignored the treatment notes of Dr. DeJesus and others from the Riverside County Department of Mental Health, when he conclusorily stated that those records indicated only that Plaintiff was seen "sporadically for medication refills." (AR at 25-26.) The Court's review of those records finds that they show far more than just medication refills. At an intake assessment on April 6, 2009, Plaintiff reported angry outbursts, erratic sleep, and variations in mood, stating that he had multiple domestic violence and felony convictions. (Id. at 307.) Dr. DeJesus' first treatment notes in April 2009 report angry outbursts, depression, changes in mood, erratic sleep patterns, and "on + off" concentration, (Id. at 302-05.) Dr. DeJesus diagnosed bipolar disorder and depression and prescribed Pristiq, an anti-depressant, and Geodon, an anti-psychotic. (Id. at 305, 318.) On May 5, 2009, Plaintiff still reported sleep problems, angry outbursts, decreased interest, on and off suicidal ideation, feelings of worthlessness and hopelessness, and concentration issues. (Id. at 373.) Plaintiff also reported that he had been jailed the prior week for five days on a domestic violence matter. (Id.) Dr. DeJesus noted that Plaintiff had been without his medication during that time; found that Plaintiff blames his illness and others for his problems; and had used methamphetamine in the weeks prior to the appointment. (Id.) On June 3, 2009, Dr. DeJesus reported Plaintiff felt tired at times; had better "interest"; feels worthless and hopeless at times; and had started anger management two days before. (Id. at 372.) On July 6, 2009, Dr. DeJesus noted Plaintiff's decreased "interest," better concentration, and "ok" energy and appetite; she also discontinued the Pristiq and prescribed Lexapro. (Id. at 371.) On August 3, 2009, Plaintiff requested that Dr. DeJesus discontinue the Lexapro

and return to the Pristiq which he preferred. (Id. at 370, 403.) On September 17, 2009, Dr. DeJesus noted a decrease in angry outbursts; interrupted sleep; that Plaintiff complained he was "tired a lot," irritable, and experienced on and off depression lasting about a week; an inability to concentrate at times; and feelings of hopelessness. (Id. at 368.) On October 20, 2009, Plaintiff reported to the health center clinician that he was "doing well," and was "stable on current medications." (Id. at 367.) On November 12, 2009, Dr. DeJesus reported that Plaintiff had no angry outbursts, was concentrating better, had not abused drugs for four to five weeks, and had been working full time at a temporary job. (Id. at 365.) On February 16, 2010, Plaintiff reported to his duty worker that he had been experiencing severe anxiety, some depression, trouble sleeping, and a lot of stress at home. (Id. at 364.) On March 24, 2010, Plaintiff reported to the duty worker that he was a "little more depressed since losing his job," which had happened because his medications made him sleepy, and he missed a few days of work. (Id. at 363.) Plaintiff also reported he has trouble focusing, had not been showering, was staying in bed up to thirteen hours a day, and that without his medications, he goes berserk. (Id.) On June 3, 2010, Plaintiff reported to the duty worker that he was continuing to struggle with depression and severe anxiety but is stable on his medications. (Id. at 360.) On July 13, 2010, Plaintiff reported continued depression and anxiety to the duty worker. (Id. at 356.) On July 14, 2010, Plaintiff again saw Dr. DeJesus, who noted that Plaintiff reported sleeping up to fourteen hours a day; rated his own depression as a 6 on a 10 point scale; experienced on and off irritability, at times with angry outbursts; and was on probation until 2012 "for domestic violence." (Id. at 354.) Dr. DeJesus continued Plaintiff's medications. (Id.) On August 12, 2010, Dr. DeJesus noted that Plaintiff's adherence to his medications was good but that his medication response was "partial"; on at least one day he had slept for 12-13 hours; his energy and appetite were good; and his concentration was good. (Id. at 350.) On November

17, 2010, Dr. DeJesus noted that Plaintiff was going through a divorce; had increased depression; his energy was up and down; his interest had decreased; he was tired; his affect was "constricted"; and his judgment and insight were impaired. (Id. at 347.)

Given these extensive treatment records, spanning several years, the Court cannot find with any confidence that the ALJ provided legally sufficient reasons for discounting Dr. DeJesus' opinions. Moreover, the Commissioner's attempts to salvage the decision fail because this Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

Based on the foregoing, the Court recommends the action be remanded for the ALJ to set forth legally sufficient reasons for rejecting the treating psychiatrist's opinions, if the ALJ again determines rejection is warranted.[7]

## C. Whether the ALJ Properly Considered All of Plaintiff's Impairments in Terms of Severity, Listing Level, or Impact on His RFC.

### 1. Plaintiff's Mental Impairments.

Plaintiff contends that the ALJ erred in finding Plaintiff's mental impairments to be non-severe. (JS at 13.) Because the Court recommends the case be remanded for proper consideration of the treating psychiatrist's opinion,

---

[7] The Court expresses no view on the merits.

the Court need not further consider this issue herein, as it will necessarily be considered by the ALJ on remand.

**2. Plaintiff's Subjective Complaints, Lay Evidence, and Treatment.**

Plaintiff also contends that the ALJ failed to account for factors pertaining to Plaintiff's RFC and "wrongly determined Plaintiff could perform work at an exertional level that far exceeded his true capacity without accounting for all of the considerations in this ruling." (Id. at 14.) Specifically, he contends the ALJ failed to adequately consider Plaintiff's "subjective complaints, lay evidence, and the fact that although he has undergone treatment for his complaints, they continue to persist." (Id. at 15.) Plaintiff also states that the ALJ failed to note that Plaintiff "may suffer from mental illness or symptoms of pain," and, even if non-severe, any impact should have been considered in the RFC. (Id.)

Plaintiff's subjective complaints will be discussed in section D below. With regard to the lay evidence, i.e., the report completed by Plaintiff's father, the ALJ stated:

> The elder Mr. Dickinson stated that the claimant's activities have become limited due to his impairments. However, according to the father, the claimant fixes his own meals; does household chores such as washing dishes, laundry, and housecleaning; cares for pets; does light yard work; visits neighbors; attends church; goes shopping as necessary; and drives. These are not the activities of a severely debilitated individual. Although the father is obviously concerned about the claimant's well-being, he is not a medical professional or otherwise qualified to diagnose severe impairments or to assess their effect on the claimant's ability to perform work-related activities. For these reasons, the undersigned gives limited probative weight to the Third Party Function Report.

(AR at 26.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses, see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th ir. 1993).

Here, the ALJ acknowledged Plaintiff's father's statements and rejected them on the basis of reasons that were germane to that witness. The Court does not consider the persuasiveness of the ALJ's reasons for rejecting those statements. Accordingly, the ALJ fulfilled his duty to consider the evidence and provide sufficient reasons for rejecting the third party evidence of Plaintiff's father. Thus, there was no error.

**3. Plaintiff's Obesity.**

Plaintiff contends that the ALJ did not fully account for Plaintiff's obesity pursuant to Social Security Ruling 02-1p, which provides that "some 'people with obesity also have sleep apnea' which 'can lead to drowsiness and lack of mental clarity during the day,'" and can also involve fatigue. (Id. at 15-16.) Plaintiff contends that "the impact of these factors went unnoted by the ALJ." (Id.) The Court does not agree.

The ALJ found that Plaintiff had the severe impairment of obesity (AR at

22), and also found that Plaintiff's sleep apnea was not severe because it was treated effectively with a CPAP machine (id. at 23). Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for purposes of eligibility for benefits); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (where claimant's multiple impairments were controllable by medication or other forms of treatment, ALJ did not err by finding impairments did not significantly limit claimant's exertional capabilities). The ALJ also considered the potential effects of Plaintiff's obesity on his body and systems, and notes that the RFC "generously consider[ed] the claimant's weight and its effect on his ability to ambulate as well as his other body systems." (AR at 26.) Thus, the Court finds that there was no error.

**D. The ALJ Properly Considered Plaintiff's Credibility.**

Plaintiff contends the ALJ failed to properly evaluate Plaintiff's credibility, merely finding that his allegations were "not fully credible," and rejecting "everything inconsistent with the 'residual functional capacity assessed herein,'" without proper explanation. (JS at 22.) Specifically, Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's documented inability to concentrate, his periods of depression resulting in extended sleep patterns, and his obesity and sleep apnea which result in extreme fatigue. (JS at 23.) Plaintiff argues that these allegations, if believed, would require a finding of disabled given "the ALJ's stipulation that plaintiff would not be employable if he were off task 20 percent of the work day or if he were to miss work three time[s] or more a month. (Id. (citing AR at 46).)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ

must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record);

Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

Here, the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible:

> [Plaintiff] was evasive in his answers to direct questions and gave different accounts about his education, asserted nervous breakdowns, side effects from psychotropic medications, etc. He also gave varying information to consultative examiners about his legal and substance use history. The claimant admitted to a methamphetamine relapse one month before the hearing and said he was going to a court-sponsored school due to domestic violence charges and anger issues. In general, the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms are credible only to the extent that they are consistent with the residual function capacity assessed herein.

(AR at26.)

An ALJ may properly rely on inconsistencies in the claimant's testimony to discredit his testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering

claimant's reputation for truthfulness and inconsistencies in claimant's testimony"); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ explained claimant's "lack of cooperation at the hearing," "presentation at the hearing," "and inconsistent statements," which were specific and convincing reasons for discounting the testimony).

Based on the foregoing, the Court finds that the ALJ stated clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's credibility and, therefore, did not arbitrarily discredit his subjective testimony. Thus, relief is not warranted on this claim.

**E. This Case Should Be Remanded for Further Proceedings.**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin, 654 F.2d at 635. Remand is warranted where additional administrative proceedings could remedy defects in the decision. Lewin, 654 F.2d at 635.

The Court finds that the ALJ committed legal error by not providing legally sufficient reasons for discounting the opinions of the treating psychiatrist. Accordingly, it appears to the Court that this is an instance where further administrative proceedings would serve a useful purpose and remedy defects.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**RECOMMENDATION**

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: April 15, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge